IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SOCIETY FOR THE PRESERVATION
AND ENCOURAGEMENT OF BARBER
SHOP QUARTET SINGING IN
AMERICA, INC. and HARMONY
FOUNDATION INTERNATIONAL, INC.,

                              Plaintiffs,                  OPINION AND ORDER

  v.

                                                                  20-cv-1073-wmc

GARY PLAAG and certain unnamed
persons acting in concert with him,

                              Defendants.

---

Before the court is an unlikely dispute over the control of the Harmony Foundation International, Inc. ("the Foundation"), a Wisconsin nonstock corporation dedicated to the promotion of barbershop singing. The Foundation was formed in 1959 by the Society for the Preservation and Encouragement of Barber Shop Quartet Singing in America, Inc. ("the Society"), itself a nonstock corporation founded in 1938. The proposal to form the Foundation included the following observation: "Barbershoppers are wonderful guys but among them we occasionally find super-aggressive types who, with the bit in their teeth, a project in hand and a head full of imagination, might mortgage everything in sight to realize a dream." (Monson Decl., Ex. E (dkt. #17-16).) Unfortunately, the circumstances leading to this lawsuit suggest that this observation is still all too apt some fifty years later.

From 1959 until 1997, the Foundation and the Society apparently worked closely together toward their shared goals. After 1997, however, the Society claims that the Foundation became increasingly inefficient and uncooperative, which led to open conflict between the two organizations between 2017 and 2020 -- a period marked by the

Foundation's board of directors refusing to take steps requested by the Society's board. On March 22, 2020, frustrated with the Foundation's resistance, the Society Board purported to exercise its right under the original trust agreement to expand the number of members of the Foundation Board and elect new members supportive of the Society's actions. However, at least some members of the then-existing nine-member Foundation Board refused to recognize the Society's attempted takeover. Thus, an impasse over the control of the Foundation resulted, leading to the filing of the present lawsuit under this court's diversity jurisdiction.

Now before the court is plaintiffs' motion for a preliminary injunction and defendant's motions to dismiss. (Dkts. #9, 28, 41.)[1] The court held a hearing to address these motions and accept evidence on March 5, 2021. Following the hearing, the court withheld resolution of the motions given attempts by the parties to mediate. Unfortunately, the prolonged mediation process also proved unsuccessful and the parties have renewed their request to resolve the motions under advisement.

After careful consideration of the evidence and the parties' arguments, the court concludes that the Foundation is not a proper plaintiff in this case, but in fact is a required defendant. Further, because the Foundation and the Society are both citizens of the same state, the Foundation's required joinder as a defendant destroys this court's diversity

---

[1] Defendant's first motion to dismiss was brought under Rule 12(b)(6) for failure to state a claim; his second motion was styled a "Rule 19 motion" in which he argued in part that rules of joinder necessitated dismissal of the suit. The latter is more properly considered a Rule 12(b)(7) motion to dismiss for failure to join a party under Rule 19, and so the court will consider it as such. *Compare* Fed. R. Civ. P. 12(b)(7) *with* Fed. R. Civ. P. 19.

jurisdiction, necessitating dismissal of the case.

## FACTS

### A. Parties

The plaintiffs named in this case are the Society and the Foundation, both of which are Wisconsin nonstock corporations with principal places of business in Tennessee. (Am. Compl. (dkt. #56) ¶¶ 2-3.) The Society is a member-based, while the Foundation has no members. Both corporations are governed by their respective board of directors, referred to here as "the Society Board" and "the Foundation Board."[2] Named as defendants are Gary Plaag, who served as the chairman of the Foundation Board from January 1, 2019, through December 31, 2020, and "certain unnamed" Foundation board members "acting in concert" with Plaag. (*Id.* ¶ 5.)

### B. Creation of the Foundation

In 1958, the Society Board received a proposal to create a "trust foundation to be known as Harmony Foundation," which would function as "a tax exempt, charitable and educational trust with a classification similar to that of the Society." (Monson Decl., Ex. E (dkt. #17-16) (capitalization omitted).) The Society Board approved the proposed Foundation Bylaws on June 29, 1959. (Monson Decl., Ex. W (dkt. #17-31) 8.) On October 14, 1959, articles of incorporation were filed with the state of Wisconsin, which established the Foundation as a "corporation formed without stock and not for profit."

---

[2] Both parties refer to members of these boards of directors as "board members" and "trustees" interchangeably, and to some extent the court will as well without deciding any legal distinction, particularly when quoting the Foundation's establishing documents.

3

(Monson Decl., Ex. 3 (dkt. #17-3) 3-8.)

C. **Foundation Bylaws**

The parties have provided the court with various version of the Foundation Bylaws, but only two are relevant to the present dispute. First are the bylaws in effect from January 29, 2009, through at least March 22, 2020, which will be referred to here as the "Foundation Bylaws." (Monson Decl., Ex. B (dkt. #17-13).) The parties do not dispute the validity of these bylaws. The second relevant version of bylaws were purportedly amended on March 22, 2020, by the Foundation Board as expanded by the Society, referred to here as the "Amended Bylaws." (Monson Decl., Ex. O (dkt. #17-23).) Defendant argues that these second bylaws were not properly amended and are void.

The interpretation of the Foundation Bylaws is key to this dispute, and so their contents must be discussed in some detail. These bylaws outline the composition and election of the Foundation Board:

- "The business and affairs of the Foundation shall be managed and administered by the Board of Trustees consisting of nine (9) elected members (the 'Elected Trustees'). At least five (5) of the Trustees must be members of the Society." (*Id.* at 2.)

- "Elected Trustees shall be nominated as provided in Section 5.01 of these Bylaws and elected by the Board of Directors of the Society in the same manner as Society officers." (*Id.*)

- Section 5.01 itself states that: "The chairman of the Board shall annually appoint a Nominating Committee consisting of at least two Elected Trustees. The Nominating Committee shall nominate at least one eligible person for each Trustee and officer position to be elected, and shall report the officer nominee(s) to the Board and the Trustee nominee(s) to the Society Board, in each case at least ten days prior to the meeting at which the election will be held. Nominations may also be made from the floor." (*Id.* at 5.)

4

In addition, the Foundation Bylaws state that: "Amendments to these Bylaws shall be effective upon adoption by a majority vote of the Board, *and* the approval of such amendments by a majority vote of the Society Board of Directors." (*Id.* at 6 (emphasis added).)

In keeping with bylaws dating back to its forming, the Foundation Bylaws also reference a "Trust Agreement" twice. First, the bylaws state that "[t]he distribution of assets of the Foundation shall be in accordance with applicable provisions of the Trust Agreement, and as provided herein." (*Id.* at 6.) Second, the following is included under the "duties of trustees":

> It shall be the duty of the Board to manage the trust estate in accordance with the provisions of the Trust Agreement entered into by and between the Foundation and the Society and to exercise such powers as are therein granted, said Trust Agreement (including any amendments or restatements thereof now existing or hereafter made) hereby being adopted by reference and made a part of these Bylaws.

(*Id.* at 2.)

Finally, the bylaws provide in relevant part that the Foundation will indemnify any person who is made a party to a proceeding by reason of their service as trustee for reasonable expenses incurred during the proceeding, unless the liability was incurred because the person breached a duty owed to the Foundation and that breach constitutes willful misconduct. (*Id.* at 8.)

As for the Amended Bylaws, which were purportedly amended by the Society Board unilaterally, no changes were made to the actual text of the bylaws themselves, but rather changes were made to an attached Trust Agreement, which plaintiffs argue effectively

5

amended the bylaws by reference. In particular, the attached Trust Agreement states that: "The Foundation Board shall consist of no less than five (5) and no more than twenty-five (25) Trustees (the "Elected Trustees"), elected by the Society's Board of Directors. The number of trustees shall be set by the Society's Board of Directors who may change the number at any time." (Amended Bylaws (dkt. #17-23) 14.)

### D. Dispute Over Foundation Governance

The Society specifically points to the adoption of a new strategic plan on July 1, 1997, as the beginning of the conflict between the two organizations. As already noted, over the next twenty years, this conflict simmered. However, according to plaintiffs, the Foundation Board declared open war after the Society's CEO Martin Monson provided a detailed strategic plan to the Foundation Board in 2017, asking that they align themselves with that plan and, in particular, setting a fundraising target for the Society's programming. In contrast, defendant Plaag represents that the Foundation simply asked Monson to provide certain necessary information regarding the Society's proposed, new plan and programs, so that the Foundation could develop an effective fundraising plan, and that neither Monson nor anyone else at the *Society* provided the requested information. Worse yet, Plaag asserts that the Society's new "Everyone in Harmony" initiative had resulted in a significant loss of donations. (PFOFs (dkt. #31) ¶ 93; White Decl. (dkt. #31-2) ¶ 38.)

During the spring and summer of 2019, the two entities' CEOs had reportedly agreed to meet on a regular basis, but by July of that year, the Society's CEO Monson began declining to attend those meetings. Then, the Foundation cut the Society's 2020 monetary grant into two "cycles," asserting that it could not commit upfront to granting

100% of the past year's grant amount because of fundraising challenging.

Despite the tensions between the two organizations, three new Foundation Board members were successfully elected in January 2020. Specifically, under Section 5.01 of the Foundation Bylaws, Plaag (who was at that time the Chairman of the Foundation Board) appointed a Nominating Committee, which then nominated eligible persons for the open positions. The Society then elected the nominated board members. Neither party disputes the validity of these three properly elected members to the Foundation's nine-member board.

On March 22, 2020, representatives of the Society Board next met with representatives of the Foundation Board, including its Chairman Plaag. According to John Donehower, a Society Board member who was present at that meeting, the Society Board representatives asked the Foundation to work with the Society to align fundraising, but the Foundation Board representatives simply stared and said nothing. In contrast, Plaag asserts that during this meeting, the Foundation representatives actually explained that they did not have the authority to act on behalf of the entire Foundation Board, but would discuss the information provided to them with the full board. Regardless, neither side has offered specific evidence that any proposed amendments to the Foundation Bylaws or changes to the Foundation Board were discussed at this meeting.

Instead, that same day, the Society Board as a whole also convened separately, although it is unclear if this meeting occurred before or after the meeting with the Foundation representatives. During this meeting, the Society Board purported to amend the Foundation Bylaws by amending the incorporated Trust Agreement to enlarge the

Foundation Board from nine to twenty-five members. The Society Board then proceeded to nominate sixteen new members to the Foundation Board and elect each nominee, although Society CEO Monson admitted at the preliminary injunction hearing that the Foundation neither gathered a Nominating Committee nor offered a list of nominees beforehand. (Tr. 3/31/2021 (dkt. #71) 77:18-:24.)

Those actions lie at the center of the parties' present dispute. Plaag refuses to recognize the authority of this expanded board, which is referred to in this opinion as the "Enlarged Foundation Board" or "Enlarged Board." Rather, on March 30, 2020, the nine-member board, referred to as the "Plaag Board," though its counsel, sent a letter to the Enlarged Foundation Board explaining its position that neither the Foundation's Bylaw nor composition of its board members had been effectively changed as a result of the Society's actions. (Monson Decl., Ex. 6 (dkt. #17-6).)

From here, everything involving the Society's relationship with the Foundation took a turn for the worse. The Plaag Board not only continued to reject the authority of the Enlarged Board; instead, it now purported to operate completely independently from the Society. In fact, according to Plaag, a meeting of the Plaag Board was convened on April 11, 2020, at which an amendment to the Foundation Bylaws was enacted and three board members were elected, all without Society input previously required by those same Bylaws.

On July 17, 2020, the Society Board next sent a letter addressed to the "Harmony Foundation International Board of Trustees," advising "of several decisions we have made restricting [the Foundation's] use of Society assets, property, and services." (Monson Decl., Ex. U (dkt. #17-29) 1.) Among other things, the letter demanded that the

8

Foundation discontinue use of the Society member list and stated that the Foundation could "no longer use any [Society] marketing assets and intellectual property in any form unless properly licensed in writing." (*Id.* at 4.) In response, on October 12, 2020, Plaag sent a letter on behalf of the Foundation, explaining in part their position that the Society data, including its membership list, had not been provided in trust and, therefore, the Foundation had the right to retain and use the data as it saw fit. (Monson Decl., Ex. 8 (dkt. #17-8) 3.)

In response, the Society Board convened again on December 1, 2020. Apparently, before that meeting, the chair of the Enlarged Foundation Board had appointed a new Nominating Committee, which in turn had submitted three Foundation Board member candidates, with three additional candidates nominated from the floor at the December 1 meeting. After a vote of the Society Board, the three candidates nominated from the floor were elected. Also at this meeting, the Society Board approved a resolution authorizing the filing of the present lawsuit. That same day, the Enlarged Foundation Board voted on and approved a similar resolution. (Denino Decl. (dkt. #12).)

## OPINION

Presently before the court is plaintiffs' motion for a preliminary injunction and defendant's motions to dismiss for failure to state a claim and for failure to join a party under Rule 19. Because this court's subject matter jurisdiction rises and falls on the arrangement of the parties in this case, the court will begin with the Rule 19 issue. Here, because such a motion is bound up in the merits of the case, the court has considered not only the pleadings but the evidence submitted by the parties in advance of this decision.

9

*See* Wright & Miller 5C Fed. Prac. & Proc. Civ. § 1359 (3d ed.) (motion to dismiss for failure to join a necessary party may be deferred until after the court receives evidence to make an informed decision about joinder). Moreover, courts "have an independent duty to look beyond the pleadings and to arrange the parties according to their true sides in the dispute" when determining whether federal jurisdiction exists. *Murray v. Mississippi Farm Bureau Cas. Ins. Co.*, 251 F.R.D. 361, 364 (W.D. Wis. 2008) (citing *City of Indianapolis v. Chase National Bank*, 314 U.S. 63, 69 (1941)).

The Foundation's alignment as a party in this case turns primarily on is whether the Society Board's unilateral amendment of the Foundation Bylaws and election of new board members was proper. Plaintiffs point to the following provisions of the Foundation Bylaws and Trust Agreement to support their position:

- The Foundation Bylaws state: "It shall be the duty of the Board to manage the trust estate in accordance with the provisions of the Trust Agreement entered into by and between the Foundation and the Society and to exercise such powers as are therein granted, said Trust Agreement (including any amendments or restatements thereof now existing or hereafter made) hereby being adopted by reference and made a part of these Bylaws." (Foundation Bylaws (dkt. #17-13) 3.)

- The Trust Agreement in turn provides that "This Restated Agreement may be amended by majority vote of the Society Board of Directors, provided, however, that a favorable vote of a majority of both the Society Board of Directors and the Foundation Board shall be necessary to change the tenure, duties or liabilities of Foundation Trustees." (Trust Agreement (dkt. #17-12) 5-6.)

According to plaintiffs, since the Trust Agreement may be amended by the Society Board (with certain exceptions), and the Foundation Bylaws incorporate amendments made to the Trust Agreement, the Society Board had the express and unilateral power to amend

10

the Bylaws and pack the Foundation Board. The plaintiffs further argue that they properly did just that, and that the sixteen new members elected to the Enlarged Board are now in control of the Foundation's board of directors.

Unsurprisingly, there is significant dispute over whether the Society in fact possessed the unilateral power to amend the Bylaws in this manner. First, there is some question as to whether Wisconsin law requires the majority of a nonstock corporation's present board to approve amendments to its bylaws. *See* Wis. Stat. § 181.1020 ("If a corporation has no members with voting rights . . . its board[] may adopt amendments to the corporation's bylaws . . . . The amendment must be approved by a majority of the directors in office at the time that the amendment is adopted."); Marilyn E. Phelan, Nonprofit Organizations: Law and Taxation, § 3.15 (2021) ("As a general rule, the board of directors may delegate the management of activities of the corporation to committees, but all activities and affairs of the corporation must be managed, and all corporate power exercised, under the ultimate direction of the board. . . . The Model [Nonprofit Corporation] Act . . . provides that these committees may not exercise extraordinary powers, such as . . . altering bylaws."); *but see* Wis. Stat. § 181.0801(3) ("The articles of incorporation or bylaws approved by the members, if any, may authorize a person to exercise some or all of the powers which would otherwise be exercised by a board."). Second, defendants argue that the Society Board's claimed ability to unilaterally amend the Bylaws via the Trust Agreement is inconsistent with the provision in the Bylaw provision that states amendments are effective by a majority vote of the Foundation Board, and that any other reading would render the Trust Agreement an "illusory contract."

11

(Def.'s Br. (dkt. #29) 15-17.) In fairness, trust law also calls into question the right of the Foundation Board to act inconsistent with the purposes of the alleged underlying trust or against the interests of its beneficiary. *See* Wis. Stat. §§ 701.0801, 701.0802.

Fortunately, the court need not reach these issues, because the undisputed evidence shows that the Society failed to follow the proper election procedures to vote in new Foundation board members even assuming its power to do so. In particular, when the Society purported to amend the Foundation Bylaws by amending the incorporated Trust Agreement, they only changed the number of members on the Foundation Board, but *not* the nomination provision, which required the following: (1) the chairman of the Foundation Board to appoint a Nominating Committee consisting of two *Foundation* Board members; *and* (2) that Nominating Committee to nominate eligible individuals at least ten days before the election meeting.[3] There is no suggestion in this record that such a nominating committee was ever formed, and in fact, the Society admits that the *Society Board*, not a Foundation nominating committee formed consistent with its bylaws, nominated the sixteen, new members. (Pls.' PFOFs (dkt. #31) ¶ 106.)

While plaintiffs correctly point out that because the nomination provision permits nominations from the floor, the Bylaws state that the Foundation chairman "shall" appoint the Nominating Committee and that committee "shall" nominate candidates *before* floor nominations can occur at a scheduled meeting. Accordingly, the plain meaning of

---

[3] The amended trust agreement does provide that "To the extent this Trust Agreement and provisions of the Foundation's Bylaws are inconsistent, this Restated Agreement shall control." (Amended Bylaws (dkt. #17-23) 13.) However, the trust agreement's silence on the topic of nomination is not "inconsistent" with the nomination provision in the Bylaws.

Foundation bylaws make such a nominating committee mandatory. *See State ex rel. Siciliano v. Johnson*, 21 Wis. 2d 482, 487, 124 N.W.2d 624 (1963) ("[T]he principles which govern the construction of contracts also govern the construction and interpretation of corporate bylaws. . . . [W]here the terms of a contract are plain and unambiguous, the duty of the court is to construe it as it stands, giving effect to the plain meaning of the language used."). That nominations "may also" be made from the floor does not eliminate these mandatory provisions. Thus, even if the Society Board successfully expanded the Foundation Board to sixteen seats, it never properly filled them by following the explicit nominating process specified in the bylaws.

The obvious upshot is that the actual Foundation Board never properly agreed to be a plaintiff in this suit. Under Federal Rule of Civil Procedure 17(b), the capacity of a corporation to sue or be sued is determined by the law under which the corporation was organized.[4] Wisconsin law provides in turn that "all corporate powers shall be exercised by or under the authority of, and the affairs of the corporation managed under the direction of, its board." Wis. Stat. § 181.0801. This power includes the ability to sue and be sued. Wis. Stat. § 181.0302(1). Further, "lack of capacity or power may be asserted in . . . [a] proceeding by the corporation, whether acting directly or through a receiver, trustee or

---

[4] Although defendants did not invoke a "lack of capacity" defense in so many terms, defendant Plaag did argue that the Enlarged Foundation Board did not have ability to authorize the Foundation to join the Society in the lawsuit, and the Foundation should be realigned as a defendant. (Def.'s Br. (dkt. #42) 8-9.) Moreover, he also consistently argued throughout this litigation that the Enlarged Foundation Board is illegitimate and cannot bind the Foundation. That is sufficient to raise a Rule 17 a defense. *RK Co. v. See*, 622 F.3d 846, 850 (7th Cir. 2010) ("Regardless of what vehicle is used for presenting the [Rule 17] objection . . . it should be done with reasonable promptness.") (quoting 6A Wright, Miller, & Kane, Federal Practice and Procedure § 1554 (3d ed. 2008)).

other legal representative, or through members in a representative suit, against the incumbent or former officers or directors of the corporation." Wis. Stat. § 181.0304. Accordingly, the Foundation must be dismissed as a plaintiff from this action.

However, this does not completely end the discussion. Naturally, defendant Plaag argues that the Foundation should be realigned as a party defendant, on the grounds that it is a necessary party to this lawsuit. (Def.'s Br. (dkt. #42) 8-9); Def.'s Br. (dkt. #79) 2-4.)[5] This issue is governed by Rule 19, which provides in relevant part states:

> (a) Persons Required to Be Joined if Feasible.
> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
> . . .

---

[5] Defendant additionally argued that the sixteen individuals who were purportedly elected to the Enlarged Foundation Board in March of 2020 be joined as plaintiffs, and the nine original Foundation Board member be joined as defendants. (Def.'s Br. (dkt. #42) 1-8.) The court is not persuaded by this argument. As the court has concluded above, the sixteen individuals were never properly elected, and so have no stake in this suit. As for the four, remaining properly elected members of the original Foundation Board, they are shielded from liability as individuals for their conduct in relation to the Foundation except under specific circumstances, such as willful misconduct. Wis. Stat. § 181.0833. Here, plaintiffs specifically do not allege that *all* members should be held individually liable, only that those who "acted in concert" with defendant Plaag should. (Am. Compl. (dkt. #56) ¶ 5 ("Plaintiffs . . . believe that at least some of the members of the [Foundation Board] in office before March 22, 2020, do not support what Plaag has done.")). Thus, there is no reason why these individuals should be dragged into this suit, unless they want to disavow Plaag's authority to act on the Foundation's behalf, something they can presumably do voluntarily. Regardless, absent federal jurisdiction, none of this is before this court.

> (b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19.

Because joining the Foundation as a defendant would destroy this court's diversity jurisdiction,[6] both the requirements of Rule 19(a) and 19(b) must be met. Unfortunately for plaintiffs, they are here.[7] This dispute is at its core a contest over the control and governance of the Foundation.[8] Although plaintiffs' claims are framed as individual charges against defendant Plaag and other "rogue" members of the Foundation Board, these contentions are premised on the assumption that the Foundation Board is controlled

---

[6] As previously noted, both the Society and the Foundation are Wisconsin nonstock corporations with principal places of business in Tennessee. (Am. Compl. (dkt. #56) ¶¶ 2-3.)

[7] Of course, this result may also ultimately prove unfortunate for defendant Plaag, as the legitimate members of his Board dwindle to zero, and the arguable legitimacy of his intransigency in failing to allow the Society as the purported beneficiary of the trust to exercise renewed control of the Board dwindles with it.

[8] This is especially apparent in plaintiffs' most recent request for relief, much of which is explicitly directed at the Foundation. (See Pls.' Br. (dkt. #78) 2 ("The Foundation and the Foundation's trustees are restrained from operating independently of the Society."; "The Foundation and Society shall work together to complete the joint annual audit . . . ."; "The Foundation shall hold all monies raised from Society members in escrow . . . .").

by the Enlarged Board, an assumption that the court has rejected. And to assess whether these individuals were in fact acting outside of their duties as board members -- or had gone "rogue" as plaintiffs put it (Pls.' Br. (dkt. #48) 31) -- the court necessarily would need to address the control of the Foundation.[9]

Thus, the Rule 19(a) requirements are met, as the court cannot accord complete relief without the Foundation as a party, and any resolution without the Foundation's participation would impair its ability to protect an interest in its own governance. As for the Rule 19(b) factors, those, too, are satisfied. The Foundation could obviously be prejudiced if a judgment were entered determining its control in its absence. Although Plaag and other "unnamed" members of the Foundation Board are defendants in this suit, they do not in their individual capacity adequately represent the interests of the Foundation as a whole. Further, the court can conceive of no protective provision or other measure that would limit this prejudice, and as explained above, any adequate form of relief would first need to definitively resolve the question of Foundation governance. Finally, dismissal of this action would not deprive the parties of an adequate remedy as this case may be refiled in state court. Indeed, another possible avenue would be to seek judicial relief from the circuit court in which the Foundation's registered office is located under Wis. Stat. § 181.0160.

---

[9] Although the court has obviously considered the control of the Foundation to render this opinion, "[a] dismissal under Rule 12(b)(7) is not considered to be on the merits and is without prejudice"; thus, "it does not have any form[al] adjudication effect." Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1359 (3d ed.); *see also* Fed. R. Civ. P. 41(b) (explaining that an involuntary dismissal "lack of jurisdiction, improper venue, or failure to join a party under Rule 19" does *not* operate "as an adjudication on the merits").

ORDER

Accordingly, defendant's motion to dismiss for failure to join a necessary party (dkt. #41) is GRANTED IN PART and this case is dismissed for lack of subject matter jurisdiction.

Entered this 16th day of July, 2021.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge